# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

COREY A. HILL, aka "C-Note"

MAGISTRATE JUDGE KEYS

08CR 486

FILED
JUDGE'S COPY
JUN 19 2008
6-19-08
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CRIMINAL COMPLAINT

CASE NUMBER:

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about March 28, 2007, at Aurora, in Kane County, in the Northern District of Illinois, defendant

> knowingly and intentionally distributed a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Special Agent, with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and that this complaint is based on the following facts:

> See attached Affidavit.

Continued on the attached sheet and made a part hereof:  X Yes __ No

_____
Tony L. Helserman Special Agent, ATF
Signature of Complainant

Sworn to before me and subscribed in my presence,

June 19, 2008                    at    Chicago, Illinois
Date                                    City and State

ARLANDER KEYS, U.S. Magistrate Judge        _____
Name & Title of Judicial Officer                        Signature of Judicial Officer

STATE OF ILLINOIS        )
                         )
COUNTY OF COOK           )
AFFIDAVIT

I, Tony L. Heiserman, after being duly sworn, state as follows:

1. I am a Special Agent, U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Chicago Field Division's Fox Valley Gang Violence Task Force, and have been so employed for six and a half years. I have received specialized training in the enforcement of the federal firearm and narcotics laws, including detailed instruction in the areas of drug identification, investigative techniques, criminal law, undercover operations, informant development and handling, physical and electronic surveillance, and the debriefing of defendants, witnesses, and informants.

2. During the course of my career, I have been involved in numerous investigations related to street gang organizations and their distribution of controlled substances, either as a case agent or in a supporting role. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to, visual surveillance, the questioning of witnesses, the use of informants, undercover operations, the use of pen registers, and the interception of wire communications. I have debriefed numerous defendants, informants, and witnesses who have personal knowledge regarding drug trafficking organizations. As a result, I am familiar with the methods of operation of narcotics traffickers, including the distribution, storage, and transportation of narcotics, and the collection of the proceeds of narcotics trafficking and money laundering, in violation of Title 21, United States Code, Sections 841, 843, 846, 952, 960, 963, and Title 18, United States Code, Section 1956.

3. The following information is based upon my personal observations, recorded conversations, knowledge and information I received from other federal law enforcement officers, the Aurora, Illinois Police Department, members of the Fox Valley Gang Crimes Task Force as well as from a cooperating witness who has proven reliable and provided information that has been independently corroborated, as set forth in part herein.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of an arrest warrant and a complaint charging COREY A. HILL, also known as "C-Note," with a violation of Title 21, United States Code, Section 841(a)(1), it does not contain all the information known to me concerning this investigation.

5. In or about February 2007, a confidential informant ("the CI"[1]) was approached by members of law enforcement in connection with the CI's suspected participation in narcotics trafficking in and about Aurora, Illinois. When the CI was approached, he/she expressed a desire to assist law enforcement with respect to other individuals the CI knew were distributing narcotics in Aurora. Since that time, the CI has voluntarily been cooperating with law enforcement. The CI is not now facing criminal charges in any jurisdiction. To date, the CI has been paid approximately $7,288 in exchange for his/her assistance in this and other investigations, which total includes a payment of approximately $6,488 for safety related relocation expenses. No promises have been made to the CI regarding any of his/her previous illegal acts, although the CI is of the belief that his/her cooperation will be considered by law enforcement in connection with any charging and/or

---

[1] The CI has the following criminal history. The CI has arrests for offenses such as fleeing the police, resisting a police officer, theft, obstruction of justice, weapons offenses, narcotics offenses, and traffic offenses. The CI has been convicted of obstruction of justice, fleeing the police, theft, a weapons offense, and narcotics offenses. The CI's most recent conviction was in 2006.

sentencing decisions relating to any criminal exposure he/she may have. The information provided by the CI has been corroborated by independent investigation that included physical surveillance, consensually recorded telephone calls, and controlled purchases of narcotics.

6. On or about March, 28 2007, the CI told Task Force Officers/Agents that the CI believed he/she could buy two and a half ounces of crack cocaine from COREY HILL, also known as "C-Note," by contacting HILL on HILL's personal telephone number. The CI further advised that he/she had already spoken to HILL by telephone and told HILL that he/she was interested in purchasing two and one-half ounces of crack cocaine.

7. The CI said he/she knows HILL to be a high ranking Gangster Disciple gang member in Aurora, IL. The CI further advised that he/she has known HILL for several years due to both the CI and HILL being involved in street gangs in Aurora growing up.

8. On March 28, 2007, at approximately 12:23 p.m., the CI, at the direction of Task Force Officers/Agents, called a person later identified as COREY A. HILL at telephone number (773)563-7675. The conversation was consensually recorded in the presence of one of the Task Force Officers/Agents. During the phone call, HILL can be overheard telling the CI, "give me like 15 minutes." The CI then told HILL that he/she was at his/her house and HILL responded by telling the CI that he did not know where the CI's house was located. The CI then gave HILL instructions on how to get to the CI's house. HILL then told the CI that he would call the CI back.

9. At approximately 12:24 p.m., a Task Force Officer/Agent searched the CI, in the presence of another Task Force Officer/Agent, for contraband or cash, with negative results. Also in the presence of another Task Force Officer/Agent, a Task Force Officer/Agent provided the CI

with $1,900 in United States Currency. The CI was then equipped with audio and video recording devices.

10. At approximately 12:25 p.m., while under surveillance by law enforcement and while equipped with operating audio and video recording devices, the CI arrived at the 100 block of Evans Ave., at the CI's residence, in Aurora, Kane County, Illinois, and sat on the porch. At approximately 12:45 p.m., the CI contacted one of the Task Force Officers/Agents and advised that HILL had just contacted the CI by phone and related that Hill would be en route to the CI's residence shortly. The CI further advised Task Force Officers/Agents that HILL told the CI that he was still cooking the "crack."

11. At approximately 1:10 p.m., the CI contacted one of the Task Force Officers/Agents again and advised that HILL had called the CI and advised that Hill was on his way to the CI's residence. At approximately 1:18 p.m. the CI contacted a Task Force Officer/Agent and advised that HILL had called again and told the CI that he (Hill) was 2 minutes away.

12. At approximately 1:20 p.m., a Task Force Officer/Agent observed a gold colored mini-van arrive at the residence in the 100 block of Evans Ave. and pull into the driveway. Task Force Officers/Agents observed a black male, later identified as COREY A. HILL, exit the driver's side of the mini-van and meet with the CI on the porch of the CI's residence. The audio recording device used by the CI captured the conversations between the CI and HILL as HILL was exiting his vehicle and walking up to the CI's residence. During that conversation, HILL complained to the CI about the bad directions the CI given HILL on how to get to the CI's residence.

13. Task Force Officers/Agents then observed the CI and HILL enter the front door of the CI's residence out of their view. A Task Force Officer/Agent reviewed the video and audio

recording device used by the CI which video and audio recording captured the discussion between HILL and the CI when HILL entered the CI's residence. The CI and HILL then went into the CI's bedroom, at which time HILL told the CI, "give me thirteen." The CI is then overheard counting out money and asking HILL, "you ain't have two and a half, though." HILL then responds by stating, "hell no, that's all I had left, and I had that in powder." The video recording device captured HILL's face on several occasions during the transaction, but the video did not capture anything being passed from HILL to the CI. The video recording however does show HILL placing a spray type can back into his coat pocket, which the CI advised HILL used to transport the crack cocaine in, by unscrewing the bottom of the can.

14.　　Based on my experience and training, the training of other law enforcement officers I have consulted including the Task Force Officers/Agents involved in this investigation and the Task Force Officer/Agent who reviewed the audio and video recording, and the Task Force Officers/Agents who debriefed the CI after the controlled buy, I understand "two and a half" to refer to two and a half ounces of crack cocaine and "thirteen" to refer to $1,300. Further, I understand that, "that's all I had left and I had that in powder" to refer to the fact that HILL had to cook up the remaining powder cocaine that he had left in order to sell the CI the two ounces of crack cocaine.

15.　　At approximately 1:22 p.m., Task Force Officers/Agents observed HILL exit the front door of the CI's residence, walk to the mini-van in the driveway and then drive away out of the area. Task Force Officers/Agents were able to identify the license plate on the mini-van as Illinois registration 6395401. A subsequent check through the Illinois Secretary of States (SOS) computer system revealed that the van is registered as a 1996 Ford Van to a Brigitte Hill at 667 W. New York St Aurora, IL. A further query of the Aurora Police Department records computer reports that HILL

5

and Bridget Hill have used this address as well as other shared addresses in the past. HILL also provided the address of 667 W. New York St. Aurora, IL to Aurora Police Officers when he was arrested on an unrelated matter on September 26, 2007, in Aurora.

16. A Task Force Officer/Agent has reviewed the Illinois Department of Corrections (IDOC) booking records, namely the photo of COREY A. HILL. The photo in IDOC's records matches the person whom the Task Force Officer/Agent saw entering the CI's residence on March 28, 2007. The IDOC photo of Hill also further matches the person who the Task Force Officer/Agent observed on the video recording with the CI on that same date.

17. After HILL left, the CI met Task Force Officers/Agents at a pre-determined location. The audio and video recording device was still working, and the CI was still under surveillance. When the CI arrived at the meeting spot, the CI provided one of the Task Force Officers/Agents with a plastic bag containing a tan chunky substance with the appearance of crack cocaine. According to the CI, the plastic bag and its contents were provided to the CI by HILL, in exchange for the $1,300. Task Force Officers/Agents searched the CI for contraband with negative results and recovered the remaining $600 in buy funds that was given to the CI by Task Force Officers/Agents. The CI was then released.

18. The tan chunky substance was later submitted to the United States Drug Enforcement Administration (DEA) North Central Laboratory, in Chicago, Illinois, for testing. The results of this examination by the DEA lab reported the substance purchased by the CI on March 28, 2007, had a net weight of 53.3 grams and was positive for the presence of cocaine base, a Schedule II Narcotic Drug Controlled Substance.

19.     Based on the foregoing, I believe that the actions of COREY A. HILL were in violation of Title 21, United States Code, Section 841(a)(1), in that he knowingly and intentionally distributed a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance.

FURTHER AFFIANT SAYETH NOT.

Tony L. Heiserman, Special Agent
Department of Justice
Bureau of Alcohol, Tobacco, Firearms &
Explosives

Subscribed and sworn to before me this
19th day of June, 2008

United States Magistrate Judge
ARLANDER KEYS

7